# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE C. BALTHASER, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | No. 20-cv-06181-RAL |
| Commissioner of Social Security,[1] | : | |

**RICHARD A. LLORET**                                                             July 20, 2022
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Bruce Balthaser filed a claim for disability insurance benefits ("DIB") with the Commissioner of Social Security. An Administrative Law Judge ("ALJ") denied his application, and the Appeals Council affirmed the ALJ's decision. Mr. Balthaser alleges that the ALJ failed to adequately consider evidence concerning his psychiatric limitations. The Commissioner responds that the ALJ's conclusions are supported by substantial evidence. After carefully reviewing the record, I find that the ALJ's decision was not capable of meaningful review because the ALJ did not adequately account for evidence of Mr. Balthaser's bipolar disorder that contradicted her conclusions. I also find that the ALJ erred in her evaluation of Mr. Balthaser's treating physician opinion. I will reverse the Commissioner's denial of benefits and remand this matter for further proceedings consistent with this opinion.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

1

## PROCEDURAL HISTORY

On September 25, 2018, Mr. Balthaser filed claims for DBI, alleging a disability beginning on January 1, 2016. Administrative Record ("R.") 15. His claim was initially denied on February 4, 2019. R. 67.

On February 24, 2019, Mr. Balthaser requested an administrative hearing before an ALJ. R. 72. The ALJ held a hearing on January 9, 2020 and issued a decision denying Mr. Balthaser's claim on February 26, 2020. R. 12, 15, 24–25. On March 4, 2020, Mr. Balthaser appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council. R. 131. The Appeals Council denied Mr. Balthaser's request for review on September 30, 2020. R. 1. On December 7, 2020, Mr. Balthaser filed this appeal in federal court. Doc. No. 1.

The parties consented to my jurisdiction (Doc. No. 6) and have briefed the appeal. Doc. No. 20 ("Pl. Br.") and 21 ("Comm'r Br.").

## FACTUAL BACKGROUND

### A. The Claimant's Background

Mr. Balthaser was forty-nine years old on the date he was last insured, December 31, 2018, making him a "younger person" at that point under the regulations, but he "subsequently changed age category to closely approaching advanced age." R. 17, 23; 20 C.F.R. § 404.1563. He has at least a high school education and can communicate in English. R. 23. He was unable to perform his past relevant work as a grain operator through the date he was last insured. *Id.* On September 25, 2018, Mr. Balthaser applied for DBI, alleging disability based on bipolar disorder (mood instability), anxiety disorder not otherwise specified, auditory hallucinations, post-traumatic stress disorder,

low frustration tolerance, difficulty following directions, depression, symptoms of psychosis, back problems, and diabetes. R. 15, 53.

## B. The ALJ's Decision

On February 26, 2020, the ALJ issued his decision finding that Mr. Balthaser was not eligible for DBI because he was not under a disability, as defined by the Social Security Act. R. 12, 24–25. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[2]

At step one, the ALJ concluded that Mr. Balthaser had not engaged in substantial gainful activity ("SGA") between January 1, 2016 and December 31, 2018. R. 17. At step two, the ALJ determined that Mr. Balthaser had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, and depression. *Id.*

At step three, the ALJ compared Mr. Balthaser's impediments to those contained in the Social Security Listing of Impairments ("listing").[3] The ALJ found that Mr. Balthaser did not meet listing 1.04 for disorders of the spine. R. 18–19. Furthermore, the ALJ found that Mr. Balthaser's depression did not meet or medically equal listing 12.04,

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

as he did not have one extreme or two marked limitations in the "paragraph B" criteria and did not establish the presence of any "paragraph C" criteria. R. 19–20.

Prior to undertaking his step four analysis, the ALJ assessed Mr. Balthaser's residual functional capacity ("RFC"), or "the most [Mr. Balthaser] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that Mr. Balthaser could undertake light work as defined in 20 C.F.R. § 404.1567(b), subject to certain limitations.[4] R. 20–23. At step four, the ALJ found that Mr. Balthaser could not perform his past relevant work as a grain operator, as defined by 20 C.F.R. § 404.1565. R. 23. At step five, the ALJ identified three jobs that Mr. Balthaser could perform considering his age, education, work experience, and RFC: price marker, hand packager, and electrical assembler. R. 23–24. Because the ALJ identified jobs that Mr. Balthaser could perform which exist in substantial numbers in the national economy, he found that Mr. Balthaser was "not disabled." R. 24–25.

## STANDARDS OF REVIEW

My review of the ALJ's decision is deferential; I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing

---

[4] Specifically, the ALJ found that Mr. Balthaser is limited to "simple, routine, and repetitive tasks and no more than frequent interaction with others." R. 20.

4

court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000).

When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence [he] rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

While it is error for an ALJ to fail "to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination," *Burnett*, 220 F.3d at 121, an ALJ's decision is to be "read as a whole," *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379–80 (3d Cir. 2004) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett,*" and a finding that the "ALJ's conclusions [were] . . . supported by substantial evidence."). The reviewing court, by reading the ALJ's opinion as a whole against the record, should be able to understand why the ALJ came to his decision and identify substantial evidence in the record supporting the decision. *See Burnett*, 220 F.3d at 119–20; *Caruso*, 99 F. App'x at 379.

The regulations reserve the RFC determination for the ALJ. *See* 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge ... is responsible for assessing your residual functional capacity."); 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); *see also Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (in assessing a claimant's RFC, the ALJ is required to consider "all relevant evidence" and adequately explain the basis for the RFC determination). Relevant evidence includes "medical records, observations

6

made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41. Although the ALJ does not need to reference every piece of evidence in the record, particularly when the medical records are "voluminous," *id.* at 42, he must provide a "clear and satisfactory" explanation of his decision. *See id.* at 41; *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). Otherwise, the district court is unable to meaningfully review the decision and determine "if significant probative evidence was not credited or simply ignored." *See Fargnoli*, 247 F.3d at 42 (quoting *Burnett*, 220 F.3d at 121).

## DISCUSSION

Mr. Balthaser argues that the ALJ erred by failing to consider his psychiatric diagnoses (aside from depression) in analyzing his limitations. Doc. No. 20, at 5. Mr. Balthaser also alleges that the ALJ's decision to weigh the opinions by state agency consultants over those of his treating physicians is not supported by substantial evidence, "as the opinions relied upon do not consider the Plaintiff's psychiatric diagnoses beyond depression." *Id.* at 5–6. In supplemental briefing, Mr. Balthaser adds that the ALJ erred by not finding his bipolar disorder diagnosis to be a severe impairment. Doc. No. 23, at 1–2.

The Commissioner responds that Mr. Balthaser conflates records discussing diagnoses with medical opinions under the regulations, and that Mr. Balthaser's treating physicians did not provide formal medical opinions or even opine on whether he was disabled. Doc. No. 21, at 4–8. The Commissioner also asserts that the ALJ appropriately considered Mr. Balthaser's residual functional limitations based on the record evidence before him. *Id.* at 5–7. In supplemental briefing, the Commissioner responds that the ALJ did not commit reversible error by not finding bipolar disorder to be a severe

7

impairment, as he considered evidence of Mr. Balthaser's bipolar disorder elsewhere in the opinion. Doc. No. 25, at 2–5.

After a careful review of the record, I find that the ALJ erred by not adequately considering the limitations presented by Mr. Balthaser's bipolar disorder in his step two and his RFC analysis.[5] I also find that the ALJ's evaluation of Mr. Balthaser's treating source opinion is not supported by substantial evidence. I will remand this case for further proceedings consistent with this opinion.[6]

### A. The ALJ erred by inadequately considering record evidence concerning Mr. Balthaser's bipolar disorder.

Mr. Balthaser argues that the ALJ did not give adequate consideration as to how his bipolar disorder impairs his ability to work. Doc. No. 20, at 5. After carefully reviewing the record, I agree that the ALJ failed to adequate consider evidence concerning Mr. Balthaser's bipolar disorder when conducting his step two and RFC analysis. This failure warrants a remand.

---

[5] Mr. Balthaser asserts that the ALJ did not adequately consider any of his psychiatric diagnoses beyond depression in his RFC analysis. Mr. Balthaser does not specify which alleged psychiatric impairments the ALJ failed to consider, see Doc. No. 20, at 5, leaving me to speculate as to the impairments at issue when reviewing the record. My independent review of the record clearly shows that the ALJ insufficiently analyzed Mr. Balthaser's bipolar disorder. Less obvious to me is whether the ALJ gave adequate consideration to the impacts of Mr. Balthaser's other psychiatric disorders on his ability to work. Mr. Balthaser must support his claims with citations to the record and relevant case law to allow for meaningful judicial review. As I am remanding this opinion based on the ALJ's incomplete evaluation of Mr. Balthaser's bipolar disorder, I will not consider Mr. Balthaser's other claims regarding the adequacy of the ALJ's RFC analysis, as they have been inadequately briefed. On remand the ALJ will give appropriate consideration to the entire record and explain his resolution of any contradictory evidence.

[6] Because Mr. Balthaser does not challenge the ALJ's conclusions concerning his physical impairments, I will only address Mr. Balthaser's arguments concerning his psychological impairments.

At step two, the ALJ is required to consider the medical severity of any impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[D]iagnoses alone are insufficient" to establish an impairment's severity. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007). A claimant must also present evidence that the impairment "*significantly* limited her ability to do basic work activities or impaired [his] capacity to cope with the mental demands of working," *see id.* (emphasis in original), and that it lasted (or was expected to last) for at least one year, *see* 20 C.F.R. § 404.1509. Failing to find an impairment to be severe is a harmless error when the ALJ does not deny benefits at this stage and properly considers the condition in the remaining analysis. *See Salles*, 229 F. App'x 145 n.2 (citing *Rutherford*, 339 F.3d at 553) ("Because the ALJ found in [claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").

The ALJ makes no reference to Mr. Balthaser's bipolar disorder in his step two analysis. The medical records make clear that Mr. Balthaser suffers the impairment of bipolar disorder, as his condition is assessed repeatedly over several years in his psychiatric health records. *See* R. 608–741. Mr. Balthaser's medical records also indicate that he has struggled at times to control his bipolar disorder. *See, e.g.*, R. 621 (on account of his bipolar disorder, Mr. Balthaser needs "total care" and "lives with his mom as caretaker."). Whether or not the impairment is severe is a determination left to the ALJ. But the ALJ cannot simply ignore pertinent evidence concerning a claimant's

9

impairments when reaching his conclusions. *See Burnett*, 220 F.3d at 121. While any error in considering evidence concerning Mr. Balthaser's bipolar disorder at step two would be harmless if the ALJ adequately considered it elsewhere in the opinion, nothing in the ALJ's opinion suggests that this evidence was considered.[7] This was error.

In determining Mr. Balthaser's RFC, the ALJ fails "to consider and explain his reasons for discounting all of the pertinent evidence before him" concerning Mr. Balthaser's bipolar disorder. *See Burnett*, 220 F.3d at 121. The ALJ made only three references to Mr. Balthaser's bipolar disorder in his RFC analysis. The ALJ stated that one record indicates that Mr. Balthaser's bipolar disorder was in "remission status," found that another record described his bipolar disorder as "mild," and noted that "[h]is affective disorder appeared to be responding very well to his mental health medication regimen." R. 22. Yet, the ALJ failed to mention that, on October 3, 2016, a provider at Kutztown Family Medicine wrote that Mr. Balthaser must receive "nearly total care" for his bipolar disorder, and his mom serves as his caretaker. R. 621. The ALJ also never cited a Berks Counseling Center record classifying Mr. Balthaser's bipolar disorder as "severe" following an April 10, 2017 visit. R. 699. This evidence contradicts the ALJ's conclusion that Mr. Balthaser's bipolar disorder is not severe and under control. Because the ALJ's opinion does not contain discussion indicating that this evidence was specifically considered and discounted for a valid reason, I am left with no way of knowing whether the ALJ properly considered and rejected this evidence, or whether

---

[7] The Commissioner asserts that the ALJ considered evidence concerning Mr. Balthaser's bipolar disorder in his step three analysis. Doc. No. 25, at 3. However, my reading of the ALJ's step three analysis shows no reference to record evidence concerning Mr. Balthaser's bipolar disorder. *See* R. 19–20.

the ALJ simply ignored and failed to consider the evidence. *See Fargnoli*, 247 F.3d at 42. This warrants a remand.

Relatedly, the ALJ committed reversible error by failing to address the third-party function report submitted by Mr. Balthaser's mother, Kathryn Balthaser. *See* R. 184–91. "Ordinarily, the failure to consider third party statements constitutes reversible error." *Diggs v. Colvin*, No. CIV.A. 13-4336, 2015 WL 3477533, at *3 (E.D. Pa. May 29, 2015) (quoting *Zerbe v. Colvin*, 2014 WL 2892389 (M.D. Pa. June 26, 2014)); *see also Burnett*, 220 F.3d at 122 ("[T]he ALJ must also consider and weigh all of the non-medical evidence before him."). As Ms. Balthaser is Mr. Balthaser's primary caregiver, the report is relevant to Mr. Balthaser's claim. Yet, the ALJ does not indicate he gave it any consideration. The report notes that Mr. Balthaser's medication leads to drowsiness, causes difficulty sleeping, which interferes with his daily life, and prevents him from being able to engage in certain basic tasks, including basic money management. R. 184, 185, 187. These facts are probative as to whether Mr. Balthaser's bipolar disorder impacts his ability to work. The ALJ cannot ignore this report in reaching his conclusions. The ALJ must explicitly evaluate this report and other relevant non-medical evidence when reaching his RFC determination on remand.

### B. The ALJ's finding that Dr. Shabana Khan's medical opinion is unpersuasive is not supported by substantial evidence.

Mr. Balthaser objects to the ALJ's decision "to accept the opinions of the state agency consultant over those of Dr. Kunsman and Berks Counseling Center." Doc. No. 20, at 5–6. I agree with the Commissioner that Mr. Balthaser interprets the definition of medical opinion too broadly. *See* Doc. No. 21, at 4–5. Nevertheless, I find that the ALJ's

evaluation of Mr. Balthaser's one treating source opinion is not supported by substantial evidence.

Under the 2017 amendments to the regulations, a medical opinion is now defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). Upon review of the record, the sole medical opinion from a non-state agency consultant is a statement from treating psychiatrist Dr. Shabana Khan dated March 28, 2014, in which Dr. Khan opines that Mr. Balthaser is unable to work for the period March 28, 2014 through March 27, 2015. R. 574. The ALJ found this opinion to be unpersuasive because the period at issue predates the proposed disability onset date. R. 22. However, this analysis is insufficient even under the more lenient 2017 regulations.

Mr. Balthaser's claim, filed on September 25, 2018, is subject to the new Social Security regulations with regard to the treatment of medical opinions, which became effective on March 27, 2017. The new regulations no longer require an ALJ to give a certain evidentiary weight to a medical opinion, but instead require the ALJ to focus on the persuasiveness of each opinion:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 416.920c(a).

The regulations note that supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ... to be." *Id.* § 416.920c(b)(2). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by

a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id.* § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *Id.* § 416.920c(c)(2). The regulations also instruct an ALJ to consider the physician's relationship with a claimant, whether the physician "has received advanced education and training" as a specialist, and other factors such as the medical source's familiarity with other evidence. *Id.* § 416.920c(c)(3)–(5). Only the concepts of consistency and supportability, however, must be addressed by ALJs in their written opinions. *Id.* § 416.920c(b)(2).

Despite providing a new analytical framework for ALJs, these regulations "[do] not authorize lay medical determinations by ALJs" and do not "relieve the ALJ of the responsibility of adequately articulating the basis for a medical opinion evaluation." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *4 (M.D. Pa. May 19, 2021). "While the ALJ is, of course, not bound to accept physicians' conclusions, [he] may not reject them unless [he] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 F. App'x 163, 168 (3d Cir. 2003) (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (internal quotation omitted).

The ALJ does not engage with the substance of Dr. Khan's opinion. The opinion states that Mr. Balthaser experiences "significant mood instability, low frustration tolerance ... poor focus, [and] difficulty following directions." R. 574. These are all relevant factors when weighing how psychiatric impairments impact one's ability to work. Yet the ALJ pays no heed to the opinion's contents. It is not permissible to

13

disregard an opinion, without evaluating it, simply because the opinion predates the alleged disability onset date. "[T]he mere fact that evidence exists prior to disability onset does not automatically mean that such evidence is not relevant, nor does it relieve an ALJ of the duty to explain why evidence predating the onset date would not be afforded substantial weight." *McKean v. Colvin*, 150 F. Supp. 3d 406, 414 (M.D. Pa. 2015) (citing *O'Donnell v. Astrue,* No. CIV.A. 10–1478, 2011 WL 3444194, at *7 at n. 7 (W.D. Pa. Aug. 8, 2011)); *see also Sperring v. Berryhill*, 2018 WL 807165, at *2 (W.D. Pa., 2018) (collecting and discussing cases). Various factors may make such an opinion more or less probative to the issue of disability after the onset date, but it won't do to disregard the opinion simply because it predates the onset date. This is particularly the case when the opinion concerns a diagnosis that plagued the claimant both before and after the onset date.

The failure to evaluate Dr. Khan's medical opinion was error and must be corrected on remand.

## CONCLUSION

For the reasons explained, Mr. Balthaser's request for review is granted, the final decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

BY THE COURT:

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**